UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TALISHA M.,[1]

                      Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

DECISION AND ORDER

1:24-cv-00648-MAV

---

## INTRODUCTION

On July 10, 2024, Talisha M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 7 (Plaintiff); ECF No. 8 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 7] is denied. The Commissioner's motion [ECF No. 8] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB on March 30, 2021, alleging a disability onset date of September 1, 2018. Administrative Record ("AR") at 17,[2] ECF Nos. 3, 4. Plaintiff's claims were denied initially on July 28, 2021, and upon reconsideration on February 17, 2022. AR at 17.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared with counsel for a telephone hearing on March 16, 2023, before an Administrative Law Judge ("ALJ"). AR at 17. Plaintiff testified that she stopped working in September 2018 due to fatigue, weakness, iron deficiency, and anemia. AR at 39. She had a stroke in December 2020 and another "very light" stroke in June 2022, which caused her to experience weakness on her right side. AR at 39–43. Her symptoms in her right hand and right leg improved by approximately 20% following the second stroke. AR at 57. Plaintiff experienced headaches nearly every day that lasted from six to twelve hours. AR at 44–45. Plaintiff testified that with medication, the severity of the headaches "decreased enough to be able to function[.]" AR at 47. However, the medication did not work when she was stressed, according to Plaintiff. AR at 47.

---

[2] The page references from the transcript are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

2

**III. The ALJ's Decision**

On August 30, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 26.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through September 30, 2022. AR at 19. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity beginning on the alleged disability onset date of September 1, 2018, through her date last insured of September 30, 2022. AR at 19.

At step two, the ALJ determined that Plaintiff had the following severe impairments: Status-post cerebral vascular accidents; primary thrombophilia with anti-thrombin III deficiency; iron deficiency anemia; and migraine headaches. AR at

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments;
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity[5] ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), with additional limitations:

> Specifically, she could lift or carry up to 10 pounds occasionally; stand or walk up to two hours total in an eight-hour workday; sit up to eight hours in a workday, with regularly scheduled breaks; occasionally use her right lower extremity for foot control operation; never climb ladders/ropes/ scaffolds; and frequently finger and handle objects with the dominant right upper extremity. In addition, the claimant needed to avoid all exposure to dangerous moving machinery and unprotected heights; and would have been off task up to 5% of the workday, in addition to regularly scheduled breaks.

AR at 21.

At step four, the ALJ found that Plaintiff had no past relevant work. AR at 24. However, at step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as order clerk, charge-account clerk, and document preparer. AR at 25. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 25.

On May 8, 2024, the Appeals Council denied Plaintiff's request to review the

---

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

4

ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for disability benefits has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to order additional evidence to be taken before the Commissioner, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without

substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks and citation omitted).

DISCUSSION

In her motion for judgment on the pleadings, Plaintiff first argues that the ALJ erred by assessing a highly specific off-task limitation of 5% because it was not supported by any medical evidence in the record. ECF No. 7 at 20–22. Plaintiff also contends that the ALJ erred by failing to address the persuasiveness of a medical record from her treating physician, Dr. Vikas Singla, M.D. *Id.* at 22–24. The Court finds that the ALJ did not commit an error in either regard.

**I. Highly Specific RFC Assessment**

An RFC is highly specific where the ALJ determines "the specific amount of time a claimant can spend on certain activities." *Heckman v. Comm'r of Soc. Sec.*, No. 18-CV-6032, 2019 WL 1492868, at *3 (W.D.N.Y. Apr. 4, 2019). Very specific RFC assessments, such as the amount of time that a claimant can be off task, "must be based on evidence in the record and not on the ALJ's own surmise." *Matthew G. v. Comm'r of Soc. Sec.*, No. 21-CV-01222-MJR, 2024 WL 48301, at *4 (W.D.N.Y. Jan. 4, 2024) (internal quotation marks and citation omitted). A case must be remanded if the ALJ failed to support a specific off task percentage with evidence in the record. *Id.* (collecting cases). However, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker o/b/o Baker v. Berryhill*, No. 1:15-CV-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018); *cf. Kenneth H. v. Comm'r of Soc. Sec.*, No. 23-CV-6358-LJV, 2024 WL 5075613, at *6 (W.D.N.Y. Dec. 11, 2024) ("[I]n contrast to cases where

the ALJ's specific finding was not error because it was more generous to the claimant than any medical opinion, medical opinions here found greater limitations."). *Kenneth H. v. Comm'r of Soc. Sec.*, No. 23-CV-6358-LJV, 2024 WL 5075613, at *6 (W.D.N.Y. Dec. 11, 2024) (internal citation omitted).

Remand is not warranted here because the ALJ's off-task assessment of 5% is *more* restrictive than the limitations set forth in the medical opinions. The medical opinions and other medical evidence support a conclusion that Plaintiff was not entitled to a time off-task limitation at all. *See* AR at 882-85 (Consultative Examiner Dr. John Schwab, D.O., did not assess any limitations or impairments during examination in July 2021 that would reduce Plaintiff's time off task); AR at 78 (Dr. Woogen, PsyD, found psychiatric limitation to be non-severe in February 2022); AR at 83 (Dr. Koernig, M.D., did not assess any limitation that would result in time off task in February 2022); AR at 937 ("[Plaintiff's] orientation, memory, [and] attention . . . were normal" in March 2021); AR at 946; 952, 958 ("Intact attention span . . ." in December 2021); 974, 983, 989, 1005 (normal memory, attention, language, and knowledge), 1054 ("good attention and concentration" in March 2022); 1008 (Plaintiff reported in August 2022 that she experienced "a significant improvement" in the severity of migraine attacks since starting medication and that severe headaches (one to two days per month) are effectively treated with medicine).

The ALJ determined that the medical opinions did not go far enough and afforded Plaintiff an off-task limitation of 5% "to account for any breaks in concentration caused by headaches." AR at 24. In so doing, the ALJ credited

Plaintiff's testimony and reported instances of headaches. AR at 44–47, 1008. An ALJ's decision to extend the benefit of the doubt to a claimant and to include additional limitations in an RFC to account for self-reported symptoms is not generally a reversible error. *See Baker o/b/o Baker*, 2016 WL 1173782, at *4; *Anissha W. v. Comm'r of Soc. Sec.*, No. 23-cv-6019-FPG, 2024 WL 123521, at *4 (W.D.N.Y. Jan. 11, 2024) (remand not warranted where "the ALJ gave [p]laintiff the benefit of the doubt with respect to her conditions and assessed a more generous limitation of [15%] off-task time").

Plaintiff has not highlighted any evidence that would support a greater than 5% off-task limitation. *See Anissha W.*, 2024 WL 123521 at *4 (explaining that the plaintiff failed to show that she required a greater off-task limitation); *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-01344 EAW, 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020) ("Ultimately, it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ."). Accordingly, the ALJ did not err in affording Plaintiff an off-task limitation of 5%.

**II. Medical Opinion**

Plaintiff contends that the ALJ erred by failing to consider a treatment note from her primary care physician, Dr. Vikas Singla, M.D., dated June 15, 2021, as a medical opinion under the applicable regulations. ECF No. 7–1 at 22–23. Plaintiff maintains that if this note were properly considered a medical opinion, the ALJ "may well have" accessed a greater off-task limitation. *Id.* at 23.

The Commissioner disagrees and responds that Dr. Singla's treatment note

does not constitute a "medical record" under 20 C.F.R. § 404.1513 because it does not contain a functional assessment of Plaintiff's limitations. ECF No. 8–1 at 12–13. The Court agrees with the Commissioner.

### A. Dr. Singla's Record

On June 15, 2021, Plaintiff visited her primary care physician, Dr. Singla, for chronic problem management. AR at 1273. Dr. Singla observed dependent edema of both lower extremities and determined that the "[m]ost likely" cause was venous insufficiency. *Id.* He sent Plaintiff for a Doppler examination and recommended that she elevate her legs while seated or lying down. *Id.* Dr. Singla provided the following assessment in a progress note:

> **Venous insufficiency of both lower extremities**
> Dependent edema noted but improved today compared to before
> Most likely venous insuff With no diastolic dysfxn noted on lat echo
> Advise leg elevation when sitting or lying down, low salt diet, keep up with water and will send for doppler
> Counseled on compression stockings but will wait until doppler results are in

*Id.* (bold in original). The progress note was contained in a medical record titled, "Office Visit." *Id.* Plaintiff underwent the Doppler examination on July 15, 2021. AR at 1276–77. The results were normal. AR at 1277 ("Normal venous imaging and Doppler right and left lower extremities. No deep venous thrombosis . . . No significant venous insufficiency."). In a follow up visit on October 5, 2021, Dr. Singla advised "[n]othing to worry about on your labs they are stable or normal[.]" AR at 1285.

## B. Analysis

Plaintiff does not dispute that the Doppler examination ruled out venous insufficiency as the cause of the lower extremity edema. ECF No. 7–1 at 23. Instead, Plaintiff asserts that the finding did not invalidate Dr. Singla's "clinical observation of edema" or the advice that she should elevate her legs while sitting. *Id.* at 22–23. However, contrary to Plaintiff's contentions, Dr. Singla's clinical observation and recommendation is the type of material constituting "other medical evidence" as opposed to a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2)-(3) (distinguishing a "medical opinion" from "other medical evidence"). Accordingly, the ALJ was not required to assess the persuasiveness of Dr. Singla's medical record dated June 15, 2021.

A "medical opinion" is a "statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, and other demands of work or adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). On the other hand, "other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis . . . ." 20 C.F.R. § 404.1513(a)(3).

Here, Dr. Singla made the clinical observation of edema and concluded that the "most likely" cause was venous insufficiency. AR at 1273. Dr. Singla then advised

Plaintiff to elevate her legs when sitting or lying down. *Id.* Notably, the medical record does not contain an assessment about what Plaintiff is still capable of doing despite the edema, as would be required for the record to be considered a medical opinion. *See Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 135 (W.D.N.Y. 2022) (finding medical record not a "medical opinion" where it did not contain "meaningful statements regarding the impact that [p]laintiff's impairments would have on her ability to perform work-related functions"); *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-cv-1040 (TWD), 2022 WL 92467, at *7 (N.D.N.Y. Jan. 10, 2022) (finding doctor's letter not a "medical opinion" "because it does not address what [p]laintiff could still do despite her limitations"); *Michael H. v. Saul*, No. 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021) (finding doctor's treatment note not a "medical opinion" because "it does not address what [p]laintiff is capable of doing in spite of his limitations" or "discuss[ ] [p]laintiff's limitations with any specificity"). Instead, Dr. Singla's medical record merely contains his clinical observation, assessment of a likely cause, and recommendation for addressing her symptoms. This medical record falls within the definition of "other medical evidence." *See* 20 C.F.R. § 404.1513(a)(3); *Melissa K. v. Comm'r*, 2022 WL 15524455 ("NP Adler-Gribble's statements are not medical opinions because they are not work-related functional limitations but, rather, are lists of symptoms and judgments about the severity of [p]laintiff's migraines"); *Kathleen M.*, 2022 WL 92467, at *7 ("Absent a discussion of what [p]laintiff could still do despite her impairments, this letter is more properly considered 'Other medical evidence' . . . ."). Accordingly, the ALJ did not err

in failing to address the persuasiveness of Dr. Singla's progress note dated June 15, 2021.

The ALJ was tasked with considering Dr. Singla's medical record along with the other evidence in the record and crafting an RFC supported by substantial evidence. The ALJ properly discharged its duty.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 7] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 8] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   September 26, 2025
         Rochester, New York

_____
HON. MEREDITH A. VACCA
United States District Judge

13